UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In re:                                                        Chapter 11

Surf 9 LLC,                                                   Case No. 25-40078-JMM

                                    Debtor.

-----------------------------------------------------------------x

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (I) APPROVING AND AUTHORIZING SENIOR SECURED POSTPETITION FINANCING AND RELATED SUPPLY FINANCING; (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) AUTHORIZING USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY AND (VI) SCHEDULING A FINAL HEARING

Upon the motion (the "DIP Motion")[1] of Surf 9 LLC (the "Debtor"), the above-captioned debtor and debtor-in-possession, pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking entry of an interim order (this "Interim Order") *inter alia*:

A.          authorizing the Debtor to obtain superpriority senior secured post-petition financing (the "DIP Facility") in the aggregate amount of up to $3,180,000 from Olden Group LLC (the "Lender") through February 22, 2025, and pending a final hearing, which the Debtor has requested be held on February 19, 2025, which funds shall be used by the Debtor in accordance with the Budgets, pursuant to the terms and conditions of that certain Senior Secured Superpriority Debtor in  Possession Loan and Security Agreement (as it may be amended, supplemented, restated or otherwise modified from time to time, the "DIP Loan and Security

---

[1] Terms capitalized but not defined herein shall have the meanings ascribed to them in the Motion or the DIP Loan and Security Agreement (defined below), as applicable.

Agreement"), by and between the Debtor and the Lender, substantially in the form annexed as Exhibit "A" to the DIP Motion;

B.        authorizing the Debtor to execute and deliver the DIP Loan and Security Agreement and other related loan documents (collectively, as further defined in the DIP Loan and Security Agreement, the "<u>DIP Loan Documents</u>"), and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents;

C.        granting to the Lender allowed superpriority administrative expense claims in this Chapter 11 Case for the DIP Facility and all obligations owing thereunder and under the DIP Loan Documents, including the Protective Advances, and including all indemnification obligations of the Debtor thereunder (collectively, and including as described in the DIP Loan and Security Agreement, the "<u>DIP Obligations</u>"), subject to the priorities set forth below;

D.        granting to the Lender automatically perfected, valid and enforceable first priority security interests in and liens on all of the Debtor's assets, as further described in the DIP Loan and Security Agreement as the Collateral, as further set forth herein;

E.        authorizing the Debtor to pay the principal, interest, fees, expenses and other amounts payable under each of the DIP Loan Documents as they become due, including, without limitation, the fees and disbursements of the Lender's attorneys and advisers as provided by and in accordance with the terms of the DIP Loan Documents;

F.        providing adequate protection liens and superpriority claims to Prepetition Lender as set forth herein for any diminution in value of its interests in the Prepetition Collateral (as defined herein);

G.        approving the Leewards Terms and granting the Leewards Liens and superpriority claims to the extent set forth in the Motion;

H.       vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents, the Leewards Terms and this Interim Order; and

I.       scheduling a final hearing (the "<u>Final Hearing</u>") to consider the relief requested in the DIP Motion and approving the form of notice with respect to the Final Hearing.

Upon the Court's consideration of the DIP Motion, the *Declaration of John M. Chenciner Pursuant to Local Bankruptcy Rule 1007-4 and in Support of Debtor's Motion for Use of Cash Collateral and to Obtain Certain Postpetition Financing,* dated January 24, 2025 [Docket Entry No. 15] (the "<u>Rule 1007 Declaration</u>"), the exhibits attached thereto, and the DIP Loan Documents; and upon notice of the interim hearing on the DIP Motion (the "<u>Interim Hearing</u>") having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014; and the Interim Hearing to consider the interim relief requested in the DIP Motion having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending the Final Hearing and otherwise is fair and reasonable and in the best interests of the Debtor, its estate, creditors and equity holders, and is essential for the continued operation of the Debtor's business;  and after due deliberation and consideration;  and for good and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACTS AND CONCLUSIONS OF LAW:[2]**

---

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Fed. R. Bankr. P. 7052.  Any statements of the Court from the bench at the Interim Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference into this Interim Order to the extent not inconsistent herewith.

I.        Petition.  On January 8, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.   The Debtor has continued in possession of its properties and is operating and managing its businesses as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Chapter 11 Case.

II.       Jurisdiction and Venue.  The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. § 1408.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief herein are sections 105(a), 361,362, 363, 364 and 507 of Bankruptcy Code and Rules 2002, 4001 and 9014 of the Bankruptcy Rules.

III.      Statutory Committee.  As of the date hereof, no official statutory committee of unsecured creditors has been appointed (after the appointment of such committee, the "Committee").

IV.      Immediate Need for Post-Petition Financing and Leewards Supply Financing Arrangements.  The DIP Facility, to the extent authorized by this Interim Order, satisfies the requirements of applicable law including sections 364(c)(d) and (e) of the Bankruptcy Code. The Debtor's need to obtain credit pursuant to the DIP Facility, as well as obtain the extended payment terms to be provided by its supplier Leewards, is immediate and critical to enable the Debtor to continue operations and to administer and preserve the value of its estate.  The ability of the Debtor to maintain business relationships, purchase inventory, and pay its suppliers and employees and to otherwise finance its operations requires the availability of working capital from the DIP Facility and the liquidity to be provided by the Leewards extended payment terms, the absence of either of which would immediately and irreparably harm the Debtor, its estate,

creditors and equity holders, and jeopardize the Debtor's enterprise value. In the absence of such relief, the Debtor does not have sufficient available sources of working capital and financing to operate its business or satisfy the costs of the Chapter 11 Case.

V.     Prepetition Indebtedness. The Prepetition Lender is entitled to receive adequate protection of its interests in the Prepetition Collateral pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code to the extent of any diminution in the value of its interests in the Prepetition Collateral resulting from, *inter alia*, the subordination of its liens and claims to the Carve Out (as defined herein) and Permitted Liens (as defined in the DIP Facility), the Debtor's use, sale or lease of such Prepetition Collateral, and the imposition of the automatic stay. Pursuant to sections 361, 363 and 507(b) of the Bankruptcy Code, as adequate protection, the Prepetition Lender will receive adequate protection liens and claims on all assets of the Debtor subject only to the claims and liens granted herein and the Carve Out, as more fully set forth herein.

VI.     Good Faith; Willingness to Lend. The Lender is willing to provide financing to the Debtor upon the terms and conditions set forth in the DIP Loan Documents, including entry of this Interim Order and the Final Order in form and substance satisfactory to the Lender including findings that the Lender is extending credit to the Debtor in good faith, and that the Lender's claims, Superpriority Claims, DIP Liens and other protections granted pursuant to this Interim Order and the DIP Loan Documents will have the protections provided by section 364(e) of the Bankruptcy Code. The Debtor has concluded, in an exercise of its business judgment, that the DIP Loans to be provided pursuant to the DIP Loan Documents represent the best financing currently available to the Debtor. The terms including the interest rate and lack of any fees are

more favorable to the Debtor than any other available financing and are the result of good faith arm's length negotiations among the Debtor, the Lender and other parties in interest.

VII.     Debtor's Acknowledgements and Agreements: The Debtor, without prejudice to the rights of any Committee and any other party in interest with requisite standing to challenge the same, admits, stipulates, acknowledges and agrees as follows (the "Debtor's Stipulations"):

(a)     Prepetition Financing Agreements. As further set forth in the Rule 1007 Declaration, prior to the Petition Date, the Lender entered into, *inter alia*, (i) that certain Loan Purchase Agreement, dated as of December 30, 2024, by and among Garantia, LLC ("Garantia") and Lender (the "Purchase Agreement"), pursuant to which Lender purchased the indebtedness, liens, and rights of Garantia, under that certain Master Purchase Order Financing Agreement, dated August 22, 2014 (as amended, restated or modified, including pursuant to that certain Amended and Restated Loan and Security Agreement, dated as of December 30, 2024, by and between the Debtor and the Lender, the "PO Financing Agreement"), by and between the Debtor and Garantia, as successor in interest to its affiliate Express Trade, Inc. ("Express Trade"); (ii) that certain Assignment and Intercreditor Agreement, dated as of December 30, 2024 (the "Intercreditor Agreement"), among Express Trade, the Debtor, Garantia and the Lender; and (iii) that certain Assignment of Intercreditor Agreement, dated as of December 30, 2024, by and between Garantia and Lender (the "License Intercreditor Assignment" and, together with the Purchase Agreement, PO Financing Agreement, Intercreditor Agreement, and all documents ancillary to or executed or delivered in connection therewith, as amended and restated from time to time, the "Prepetition Financing Agreements").

(b)     Prepetition Collateral. The Debtor's obligations under the Prepetition Financing Agreements are secured by a blanket lien (the "Prepetition Liens") on substantially all of the

Debtor's assets, including but not limited to all of the Debtor's tangible and intangible property, equipment, inventory, accounts receivable, and all proceeds of the foregoing, as further described in the PO Financing Agreement (the "Prepetition Collateral"), which was properly perfected pursuant to the filing of UCC financing statements.

(c)     Collection of Receivables by Express Trade. Pursuant to the Debtor's Collection Factoring Agreement with Express Trade, Express Trade continues to collect receivables of the Debtor, including receivables constituting Prepetition Collateral, which it holds in trust for the Prepetition Lender to be remitted to the Prepetition Lender for application to the Prepetition Indebtedness.

(d)     Pre-Petition Advances. Since purchasing the Prepetition Indebtedness, but prior to the Petition Date, Lender, in its capacity as Prepetition Lender, made protective advances of new funds in the total principal amount of $2,980,350, upon request by the Debtor as necessary to purchase inventory, fulfill existing purchase orders, pay payroll and pay other necessary expenses. Such pre-petition advances remain outstanding.

(e)     Prepetition Indebtedness.  As of the Petition Date, the Debtor owed Prepetition Lender not less than $27,462,048.47, plus the pre-petition advances of $2,980,350.00, for a total of $30,442,398.47, plus interest accrued from December 27, 2024 through the Petition Date (the "Prepetition Indebtedness").

(f)     Validity of Prepetition Liens and Prepetition Indebtedness. Subject to the rights of the Committee and any other party in interest with requisite standing to challenge the Prepetition Lender's liens or claims to the extent provided herein, (a) the Prepetition Liens are valid, binding, enforceable, non-avoidable and duly perfected; (b) the Prepetition Liens have priority over any and all other liens on the Prepetition Collateral, and (c) the Prepetition Indebtedness

constitutes legal, valid, binding, and non-avoidable obligations of the Debtor, enforceable in accordance with the terms of the Prepetition Financing Agreements.

(g)     <u>Cash Collateral.</u> All of the Debtor's cash and cash equivalents, including the cash in its deposit accounts, security deposits, wherever located and whenever acquired, whether in the form of cash, profits, accounts receivable, whether as original Prepetition Collateral or proceeds of other Prepetition Collateral, now in the possession, custody or control of the Debtor or persons in privity with the Debtor, including but not limited to receivables collected or held by Express Trade, or on which the Debtor will obtain an interest during the pendency of this Chapter 11 Case, constitutes cash collateral in which Lender has asserted and maintains a first priority security interest in and lien on for purposes of and within the meaning of section 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>").

(h)     <u>Adequate Protection</u>. As a result of (i) the granting of senior liens and security interests herein pursuant to section 364(d) of the Bankruptcy Code; (ii) the use of Cash Collateral (as hereinafter defined) pursuant to section 363(c) of the Bankruptcy Code; (iii) the use, sale, or lease of certain collateral (other than Cash Collateral); (iv) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code; and (v) the establishment of the Carve-Out (as hereinafter defined), the Prepetition Lender is entitled to adequate protection for and solely to the extent of any diminution in value of its interest in the Prepetition Collateral (a "<u>Diminution in Value</u>"). The Prepetition Lender has agreed to accept the Adequate Protection Liens (as defined below) and Adequate Protection Superpriority Claim (as defined below) to be provided herein upon entry of the Interim Order. The adequate protection provided herein is necessary to protect the Prepetition Lender from any Diminution in Value in the Prepetition Collateral and to obtain the consents and agreements contained herein, including that the adequate protection is subject

and subordinate to the Carve Out. The terms of adequate protection were negotiated in good faith, are fair and reasonable, and reflect the Debtor's prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration.

(i)    Post-Petition Protective Advances. Since the Petition Date, Lender, in its capacity as Prepetition Lender, made protective advances of new funds in the total principal amount of $2,150,997.33 (the "Protective Advances"), upon request by the Debtor as necessary to purchase inventory, fulfill existing purchase orders, pay payroll and pay other necessary expenses. Such post-petition Protective Advances remain outstanding.

(j)    Leewards Supply Finance Arrangements and Liens. The Debtor has negotiated a supply finance arrangement with its most critical overseas factory, Leewards, for its supply of post-petition products without requiring payment therefor until receipt by the Debtor from Costco of the proceeds of the sale of such products. In addition, Leewards has agreed to release $600,000 from the Deposit otherwise held by Leewards as security for payment for future goods to be supplied, to be used by the Debtor as working capital. In exchange for these extended payment terms and additional liquidity, Leewards requires, and the Debtor, Prepetition Lender and Lender have agreed, subject to approval by the Court herein, to the granting of the Leewards Liens (defined below) on the Leewards Collateral (defined below) in an amount up to the value of the cost of goods provided by Leewards to the Debtor, and to Leewards receipt of all proceeds of Leewards Collateral in payment for its supply of such goods, and the other Leewards Terms set forth in the Motion. As set forth in the Budget, the extended payment terms provided by Leewards, together with the funds under the DIP Facility, are necessary to ensure the Debtor has the liquidity required to sustainably finance its operations. The Leewards Terms are reasonable and in the best interests of the Debtor and its estate and creditors to enable the Debtor to maintain

the liquidity necessary to continue purchasing sufficient product to fulfill purchase orders in the ordinary course of its operations.

(k)     Use of Proceeds of the DIP Facility.  As a condition to the Lender's entry into the DIP Loan and Security Agreement and the extension of credit under the DIP Facility, the Lender requires, and the Debtor has agreed, that proceeds of the DIP Facility shall be used in a manner consistent with the terms and conditions of the DIP Loan Documents and in accordance with and to the extent set forth in the Budget annexed to the Motion as Exhibit "B" (as the same may be modified from time to time with the consent of the Lender without further order of the Court, consistent with the terms of the DIP Loan Documents, the "Budget"), solely for working capital to fund the Debtor' operations and the administration of this Chapter 11 Case, and any other expenses as have been or hereafter are consented to by the Lender in writing and approved by the Court, on notice to any Committee and the United States Trustee.

(l)     No Representations or Reliance.  The Debtor stipulates that the Lender has made no representations, offered no opinions, and has taken no positions, either individually or collectively, regarding the value of any portion of the DIP Collateral, and, in determining the value of the DIP Collateral, the Debtor has not relied upon any representation, opinion or position of the Lender in regard thereto.

I.     Final Hearing.  At the Final Hearing, the Debtor will seek final approval of the DIP Facility pursuant to a proposed final order (the "Final Order"), which shall be in form and substance satisfactory to the Lender, in its sole discretion, approving such post-petition financing arrangements and consistent with the DIP Loan Documents, notice of which Final Hearing and Final Order will be provided in accordance with this Interim Order.

II.    Notice.  Pursuant to Rule 4001(c) of the Bankruptcy Rules, notice of the Interim Hearing and the relief requested in the DIP Motion has been given to: (i) the Office of the United States Trustee for the Eastern District of New York; (ii) counsel to the Lender; (iii) counsel to Express Trade; (iv) counsel to Leewards; (v) the United States Attorney for the Eastern District of New York; (vi) the parties included on the Debtor's list of twenty (20) largest unsecured creditors; (vii) the Internal Revenue Service; (viii) all known holders of liens, encumbrances, or security interests in the Collateral; and (ix) all other parties required to receive service under Bankruptcy Rule 2002.  Based on the foregoing:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, that:

1.    Interim Approval.  The DIP Motion is GRANTED, on an interim basis, to the extent provided herein.  The Debtor is immediately authorized and, pursuant to the terms of this Interim Order, the terms and conditions of the DIP Loan and Security Agreement and the Budget, empowered to (a) borrow funds under the DIP Facility in the aggregate principal amount of up to $3,180,000 through February 22, 2025, subject to the Budgets; and (b) use Cash Collateral, upon entry of this Interim Order, in accordance with and for the purposes permitted under the DIP Loan and Security Agreement and this Interim Order.

2.    Authorization of the DIP Financing and DIP Loan Documents.  The DIP Loan Documents, as modified herein, hereby are approved on an interim basis.  The Debtor is expressly and immediately authorized and empowered to execute and deliver the DIP Loan Documents, and to incur and perform the DIP Obligations, which shall include the post-petition Protective Advances, in accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents, and to deliver all instruments and documents which may be required or necessary for the performance by the Debtor under the DIP Facility and the creation and

perfection of the DIP Liens (as defined herein) described in and provided for by this Interim Order and the DIP Loan Documents. The Debtor is hereby authorized to pay the principal, interest, fees, expenses and other amounts described in the DIP Loan Documents and all other documents comprising the DIP Facility as such become due, without need to obtain further Court approval, including, without limitation, the fees and disbursements of the Lender in such capacity (including the reasonable fees and expenses of the Lender's attorneys and advisers), all of which fees and expenses shall constitute DIP Obligations. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise will be deposited and applied as required by this Interim Order and the DIP Loan Documents. Upon execution and delivery, the DIP Loan Documents shall represent valid and binding obligations of the Debtor enforceable against the Debtor and the estate in accordance with the terms of the DIP Loan Documents.

5.      Authorization to Borrow. Subject to the terms and conditions set forth in the DIP Loan Documents and this Interim Order, and to prevent immediate and irreparable harm to the Debtor's estate, the Debtor is hereby authorized to make interim draws in the form of revolving DIP Loans subject to the terms and conditions of the DIP Loan and Security Agreement and pursuant to the Budget.

6.      DIP Obligations Including Protective Advances. The DIP Loan Documents including this Interim Order shall constitute and evidence the validity and binding effect of the Debtor's DIP Obligations, including the Protective Advances, which DIP Obligations shall be enforceable against the Debtor, its estate and any successors thereto, including, without limitation, any trustee or other estate representative appointed or elected in this Chapter 11 Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of this Chapter 11

Case.  The DIP Obligations shall be due and payable in full, without notice or demand except as expressly set forth in the DIP Loan and Security Agreement, on the earliest of (i) the effective date of a plan of reorganization of the Debtor confirmed by the Court, (ii) consummation of a sale or other disposition of a material portion of the Debtor's assets pursuant to 11 U.S.C. 363 or otherwise, (iii) the Debtor's seeking, or consenting to, conversion of the Chapter 11 Case to a proceeding under Chapter 7 of the Bankruptcy Code, (iv) conversion of the Chapter 11 Case to a proceeding under Chapter 7 of the Bankruptcy Code, (v) dismissal of the Chapter 11 Case (vi) the Debtor's seeking, or consenting to, the dismissal of the Chapter 11 Case, (vii) the date that is twelve (12) months from the date of entry of the Interim Order, or (viii) any date on which the DIP Loans are accelerated during the continuance of an Event of Default..

7.     DIP Liens and DIP Collateral.  Effective immediately upon the execution of this Interim Order, pursuant to sections 361, 362, 364(c)(2) and 364(c)(3) and 364(d) of the Bankruptcy Code:  (a) the Lender is hereby granted continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected post-petition security interests in and liens in on (the "DIP Liens") all existing and after-acquired real and personal property, and all other assets of the Debtor, except for all chapter 5 causes of action and the proceeds thereof, tangible and intangible, whether now owned by or owing to, or arising in favor of the Debtor, whether owned or consigned or licensed by or to, or leased from or to the Debtor (to the full extent of such Debtor's interests therein), and regardless of where located, including, without limitation, accounts, goods, inventory, receivables, and the following (collectively, the "DIP Collateral"):[3] (i) all Prepetition Collateral and the proceeds thereof, (ii) all post-petition assets of the Debtor,

---

[3]   All defined terms used in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Loan Documents.  All terms not specifically defined in the DIP Loan Documents shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code, as applicable.

and proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the foregoing, and any and all tangible or intangible property resulting from the sale, exchange, collection or other disposition of any of the foregoing, or any portion thereof or interest therein.

8.      DIP Lien Priority.   The DIP Liens securing the DIP Obligations shall be continuing, valid, binding, enforceable, non-avoidable and automatically perfected first priority security interests and liens junior only to the Carve Out and, solely with respect to the Leewards Collateral, the Leewards Liens.  The DIP Liens shall otherwise be senior to all other security interests, mortgages, collateral interests, liens or claims on or to any of the DIP Collateral.  Other than as specifically set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in this Chapter 11 Case.  The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in this Chapter 11 Case, upon the conversion of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, and/or upon the dismissal of this Chapter 11 Case or any successor case. The DIP Liens shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code.

9.      DIP Superpriority Claim.  Upon entry of this Interim Order, the Lender is hereby granted, pursuant to section 364(c)(1) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in this Chapter 11 Case and any successor case (collectively, the "DIP Superpriority Claim") in the amount of the DIP Obligations.  The DIP Superpriority Claim shall be subordinate only to the Carve Out, and otherwise the DIP Superpriority Claim shall have priority over any and all administrative expenses and unsecured claims against the Debtor or its estate in this Chapter 11 Case and any successor case, at any time existing or arising, of any kind or nature whatsoever, including, without limitation,

administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), and 1114, and any other provision of the Bankruptcy Code, and at all times be senior to the rights of the Debtor and its estate, and any successor trustee or other estate representative to the extent permitted by law.

10. <u>No Obligation to Extend Credit</u>. The Lender shall not have any obligation to make any loan under the DIP Loan Documents, unless all of the conditions precedent to the making of such loan under the terms of the applicable DIP Loan Documents and this Interim Order have been satisfied in full or waived in writing by the Lender.

11. <u>Use of DIP Facility Proceeds</u>. The Debtor shall use DIP Loans only for the purposes specifically set forth in this Interim Order, the DIP Loan and Security Agreement and in compliance with the Budget, which sets forth on a line-item basis the Debtor's anticipated cumulative cash receipts and expenditures on a weekly basis, and all necessary and required cumulative expenses that the Debtor expects to incur during each week of the Budget. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business unless otherwise approved by the Court.

12. <u>Authorization to Use Cash Collateral and Granting Adequate Protection</u>: Subject to the terms and conditions of this Interim Order and the DIP Loan and Security Agreement, the Debtor is authorized to use the Prepetition Lender's Cash Collateral, solely up to the amounts, at the times and in accordance with and for the purposes identified in the Budget, until the Termination Date (defined below), on the following terms and conditions:

(a) The Debtor shall provide to the Prepetition Lender, counsel to any Committee, and the United States Trustee, so as to actually be received within three (3) business days

following the end of every other week, bi-weekly line-by-line variance reports, for the preceding bi-weekly period and on a cumulative basis for the period from the Petition Date to the report date, comparing actual specified cash receipts and specified disbursements to lumped amounts projected in the Budget. Absent the written consent of the Prepetition Lender, the Debtor cannot exceed the Permitted Weekly Variance. Notwithstanding anything to the contrary, in no event shall any proceeds of the Prepetition Collateral be used for any investigation or analysis of any claim or cause of action against Prepetition Lender or any of its affiliates.

(b)     Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Lender in the Cash Collateral to the extent of any Diminution in Value, the Prepetition Lender is hereby granted continuing, valid, binding, enforceable and automatically perfected post-petition additional and replacement security interests in and liens on the Prepetition Collateral and proceeds thereof (collectively, the "Adequate Protection Liens") as follows: (a) a first priority perfected security interest in, and liens on, all DIP Collateral, whether arising prepetition or post-petition, that is not already subject to a valid, perfected, enforceable and unavoidable lien or security interest on the Petition Date; and (b) a junior perfected security interest in and lien on all DIP Collateral, junior only to the DIP Liens and Carve Out and Leewards Liens, whether arising prepetition or post-petition, that is subject to (i) a valid, perfected, enforceable and unavoidable consensual lien or security interest in existence on the Petition Date or (ii) a valid and unavoidable consensual lien or security interest in existence on the Petition Date that is perfected subsequent thereto as permitted by section 546(b) of the Bankruptcy Code.

(c)     As additional adequate protection, the Prepetition Lender shall be granted an allowed superpriority administrative expense claim pursuant to sections 503(b), 507(a), and

507(b) of the Bankruptcy Code (the "Adequate Protection Superpriority Claim") to the extent of any Diminution in Value. The Adequate Protection Superpriority Claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtor and proceeds thereof, but subject to the Carve Out and any superpriorty claims in favor of Leewards pursuant to the Leewards Terms. Subject only to the Carve Out and the DIP Obligations and any Leewards superpriority claim, the Adequate Protection Superpriority Claim granted to the Prepetition Lender hereunder shall not be junior to any administrative expense claims and shall have priority over all administrative expense claims against the Debtor now existing or hereafter arising, of any kind or nature whatsoever, including those of the kinds specified in or ordered pursuant to sections 105, 326, 327, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 726, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment.

(c)     The Adequate Protection Liens shall not attach to chapter 5 causes of action or the proceeds thereof and shall be junior only to the Carve Out and the DIP Liens and, solely with respect to the Leewards Collateral, the Leewards Liens. Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in this Chapter 11 Case or any successor case, and shall be valid and enforceable against any trustee appointed in this Chapter 11 Case or any successor case, or upon the dismissal of this Chapter 11 Case or any successor case. The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the Debtor's estate pursuant to

section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

(d) The adequate protection set forth herein is without prejudice to, and does not constitute a waive of, the rights of the Prepetition Lender to request further or alternative forms of adequate protection at any time or the rights of the Debtor or any other party to contest such request.

12. <u>Leewards Supply Finance Arrangements and Liens</u>. The Leewards Terms set forth in the Motion are approved as set forth herein. Leewards shall have and is hereby granted automatically perfected liens and security interests on all goods supplied by Leewards to the Debtor from time to time during this Chapter 11 Case, as requested by the Debtor in accordance with the Budget, together with the proceeds thereof and all documentation in respect thereof (collectively, the "<u>Leewards Collateral</u>") in an amount up to the value of the cost of such Leewards Collateral (the "<u>Leewards Liens</u>"). Solely in respect of the Leewards Collateral and up to the value of the Leewards Liens, the Leewards Liens shall be senior to all liens and security interests herein granted. Leewards shall have and is hereby granted the right to receive assignment of all proceeds of Leewards Collateral, including receivables of the Debtor from the sale of Leewards Collateral to Costco, within one (1) week after receipt thereof from Costco (by the Debtor or Lender or Express Trade). Such proceeds may be collected by Express Trade and indirectly remitted to Leewards by the Lender pursuant to wire instructions to be provided by Leewards to the Debtor and Lender. Leewards is directed to release $600,000 to the Debtor and to retain the balance of the Retainer to be applied pursuant to the Leewards Terms.

13. <u>Rights and Remedies of Lender Upon Event of Default.</u> Upon the occurrence and during the continuance of any event constituting an Event of Default under the DIP Loan and

Security Agreement, the Prepetition Lender, on written notice to the Debtor ("Notice of Termination"), may declare (i) that the Debtor's right to use Cash Collateral is immediately terminated ten (10) days after Notice of Termination. During the ten (10) day period described in the preceding paragraph, the Debtor has the right to seek an order from the Court determining that the Event of Default has not occurred and the right to continue to use Cash Collateral. If the Bankruptcy Court has not ruled that an Event of Default has not occurred or otherwise authorized the Debtor to continue to use Cash Collateral before the expiration of the ten (10) day notice period, then immediately upon expiration of such period (the "Termination Date"), the Debtor's remaining right to use Cash Collateral shall automatically cease, and the Debtor shall no longer have the right to use Cash Collateral without further Order of the Court.

(b)     Amendment of DIP Loan Documents. The Debtor, with express written consent of the Lender, may enter into any non-material amendments, consents, waivers, or modifications to the DIP Loan Documents in accordance with the terms thereof without the need for further notice and hearing or any order of this Court, provided that approval of this Court, upon notice and hearing, shall be required for any amendments, authorizations, waivers, consents or other modifications to the DIP Loan Documents that are material or that shorten the maturity of the extensions of credit thereunder or increase the rate of interest or fees payable thereunder.

14.     Section 507(b) Reservation. Nothing herein shall impair, limit or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Lender pursuant to this Interim Order is insufficient to compensate for any Diminution in Value of its interests in the Prepetition Collateral during the pendency of this Chapter 11 Case or any successor case.

15. <u>Budget Maintenance</u>.  The Budget, as well as any modification to, or amendment or update of, the Budget, shall be in form and substance acceptable to and approved by the Lender in its sole discretion.

16. <u>Modification of the Automatic Stay</u>.  The automatic stay imposed under Bankruptcy Code section 362(a) hereby is modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to:  (a) permit the Debtor to grant the DIP Liens, Adequate Protection Liens, Leewards Liens, DIP Superpriority Claim and Adequate Protection Superpriority Claim;  (b) permit the Debtor to perform such acts as the Lender may request in its reasonable discretion to assure the perfection and priority of the liens granted herein;  (c) permit the Debtor to incur all liabilities and obligations to the Lender under the DIP Loan Documents, the DIP Facility and this Interim Order;  and (d) authorize the Debtor to pay, and the Lender to retain and apply, payments made in accordance with the terms of this Interim Order.

17. <u>Automatic Perfection of Liens</u>.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens and the Adequate Protection Liens and the Leewards Liens, without the necessity for filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens and the Leewards Liens, or to entitle the Lender and Prepetition Lender and Leewards to the priorities granted herein.  Notwithstanding the foregoing, the Lender, Prepetition Lender and Leewards are authorized to file, as each deems necessary or

advisable, such financing statements, mortgages, notices and other instruments or documents to perfect in accordance with applicable non-bankruptcy law or otherwise to evidence the applicable liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required to create, evidence or perfect such liens. The Debtor is authorized to and shall execute and deliver promptly upon demand to the Lender all such financing statements, mortgages, title insurance policies, notices, instruments and other documents as the Lender may reasonably request. A photocopy of this Interim Order may be filed as a financing statement or notice with any filing or recording office, or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, mortgages, notices of lien, instrument or similar document.

18. <u>Maintenance of Cash Collateral, DIP Collateral, and Cash Management System</u>. Until the indefeasible payment in full in cash of all DIP Obligations, and the termination of the Lender's obligation to extend credit under the DIP Facility, the Debtor is authorized and directed to insure the DIP Collateral as required under the DIP Loan Documents and maintain the cash management system in effect as of the Petition Date, as modified by any order that may be entered by the Court, or as otherwise agreed to by the Lender, in its reasonable discretion, or as otherwise required by the DIP Loan Documents. Express Trade is authorized to remit receivables constituting DIP Collateral to the Lender to be applied in accordance with the DIP Documents and the Budget. The Prepetition Lender, Lender and Express Trade are authorized to collect, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into their possession or control that constitute Prepetition Collateral, DIP

Collateral, or Leewards Collateral, including Cash Collateral, and to apply such amounts in accordance with the terms of this Interim order and any Final Order.

19.   <u>Disposition of DIP Collateral; Rights of the Lender</u>.  The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral outside of the ordinary course of business without the prior written consent of the Lender, and the proceeds of any such sale, transfer, lease, encumbrance or other disposition shall be turned over to the Lender to satisfy any outstanding DIP Obligations in accordance with the terms of the DIP Loan and Security Agreement.

20.   <u>Rights and Remedies Upon Event of Default</u>.  Immediately upon the occurrence and during the continuation of an Event of Default, the Lender, following any notice or cure period provided for under the DIP Loan and Security Agreement, shall be entitled to declare (a) all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable, (b) the termination or restriction of any further commitment to extend credit to the Debtor to the extent any such commitment remains, and/or (c) the termination of the DIP Credit Agreement and any other DIP Loan Document as to any future liability or obligation of the Lender, but without affecting any of the DIP Liens or the DIP Obligations.

21.   <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order</u>.  The Debtor represents that the Lender has acted in good faith in connection with this Interim Order and its reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order, and in accordance with section 364(e) of the Bankruptcy Code, in the event that any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code with respect to

the DIP Obligations incurred or approved pursuant to this Interim Order, including the Protective Advances. Any such modification, amendment or vacatur shall not affect the extent, validity, perfection, priority, allowability, enforceability or non-avoidability of any advances previously made or made hereunder, or lien, claim or priority granted, perfected, authorized or created hereby. Any liens or claims granted to the Lender hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

22.     <u>Proofs of Claim</u>. The Lender will not be required to file proofs of claim or requests for administrative expenses in this Chapter 11 Case, and, notwithstanding anything contained herein, the Debtor's Stipulations or the other provisions of this Interim Order relating to the claims granted herein, entry of this Interim Order shall be deemed to constitute a timely filed proof of claim or request for administrative expense, as applicable.

23.     <u>Rights of Access and Information</u>. Without limiting the rights of access and information afforded the Lender under the DIP Loan Documents, the Debtor is authorized to afford representatives, agents and/or employees of the Lender reasonable access to the Debtor's premises, books and records in accordance with the DIP Loan Documents, and is authorized to reasonably cooperate, consult with and provide to such persons all such information as may reasonably be requested.

24.     <u>Carve Out</u>. As used in this Interim Order, the "Carve Out" means the following expenses:  (i) all statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. Section 1930(a)(6) and applicable interest thereon; and (b) allowed and unpaid professional fees and disbursements incurred by counsel to the Debtor, subject to the Budget, to the extent allowed or

later allowed by order of the Court under sections 330 and 331 of the Bankruptcy Code (collectively, the "Carve Out"). During the continuance of an Event of Default under the DIP Facility or the Financing Orders, as the case may, the Carve Out set forth under subsection (b) above shall be limited to $75,000, and any payments made pursuant thereto shall reduce the Carve Out on a dollar-for-dollar basis. For the avoidance of doubt, the Lender shall have no obligation to advance monies in excess of the Maximum Amount.

25.     <u>No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees</u>. The Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any professionals incurred in connection with this Chapter 11 Case or any successor case. Nothing in this Interim Order or otherwise shall be construed (i) to obligate the Lender in any way to pay compensation to or to reimburse expenses of any professional, or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement; (ii) to increase the Carve Out if actual allowed professional fees are greater than amounts reflected in the Budget or estimated fees and disbursements of a professional are greater than amounts reflected in the Budget; or (iii) as consent to the allowance of any professional fees or expenses of any professional. Any funding of the Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Loan Documents, the Bankruptcy Code and applicable law. The Lender's liens and claims granted pursuant to this Interim Order shall, however, be subject and subordinate to the Carve Out as set forth in this Interim Order.

26.     <u>Limitations on the DIP Facility, the DIP Collateral and the Carve Out</u>. The DIP Facility, the DIP Collateral and the Carve Out may not be used by the Debtor in connection with: (a) preventing, hindering or delaying any of the Lender's enforcement against or realization upon

any of the DIP Collateral or Prepetition Collateral once an Event of Default has occurred, except to contest that an Event of Default has occurred; (b) selling or otherwise disposing of DIP Collateral without the consent of the Lender; (c) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the Lender; (d) investigating, litigating, objecting to, contesting or challenging in any way, or raising any defenses to the claims, liens, interests (including interests in the Prepetition Collateral or DIP Collateral), mortgages or security interests held by or on behalf of the Lender; (e) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Prepetition Lender, Lender, or any of its officers, directors, agents or employees; (f) investigating, litigating, objecting to, contesting or challenging in any way, or raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of any of the Prepetition Indebtedness or DIP Obligations, or the validity, extent, amount, perfection, priority or enforceability of the Prepetition Liens or DIP Liens, or any other rights or interests of the Lender or Prepetition Lender under the DIP Loan Documents or Prepetition Financing Agreements; or (g) seeking to subordinate or re-characterize the Petition Indebtedness or the DIP Obligations.

27. <u>Reservation of Certain Third-Party Rights and Bar of Challenges and Claims</u>. The Committee, and any other party in interest (other than the Debtor and their successors, with the exception of a Chapter 7 or Chapter 11 trustee appointed during the Challenge Period (as defined herein)) approved by the Court, may seek to avoid, object to or otherwise challenge the findings or Debtor's Stipulations herein regarding (a) the validity, extent, priority or perfection of the mortgages, security interests and liens of the Prepetition Lender, or (b) the validity, allowability, priority, fully secured status or amount of the Prepetition Indebtedness. A party in

interest, including the Committee, must commence, as appropriate, a contested matter or adversary proceeding raising such claim, objection, defense or other challenge, including, without limitation, any claim against the Lender in the nature of a setoff, counterclaim or defense to the applicable Prepetition Indebtedness or the Prepetition Liens (each, a "Challenge") within sixty (60) calendar days from the date of appointment of the Committee or, if no Committee is appointed, from entry of the Final Order (the "Challenge Period"). The applicable Challenge Period may only be extended with the written consent of the Lender or by order of the Court for good cause shown. Upon conversion of the case to chapter 7 or the appointment of chapter 11 trustee, to the extent that the applicable Challenge Period has not expired, such period shall automatically be extended for sixty (60) days from the date a chapter 7 or 11 trustee is appointed. Upon the expiration of the Challenge Period (the "Challenge Period Termination Date"), without the filing of a Challenge (or if any such Challenge is filed and overruled): (i) any and all such Challenges by any party (including, without limitation, the Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in this Chapter 11 Case, and any Chapter 7 trustee and/or examiner or other estate representative appointed or elected in any successor case), shall be deemed to be forever waived and barred; and (ii) all of the Debtor's Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent and validity as to the Prepetition Lender's claims, liens and interests as set forth herein shall be of full force and effect and forever binding upon the Debtor's estate and all creditors, interest holders and other parties in interest in this Chapter 11 Case and any successor case.

28. No Third-Party Rights. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third-party, creditor, equity holder or any direct, indirect or incidental beneficiary.

29. <u>No Marshaling/Applications of Proceeds</u>.  The Debtor shall forever be barred from asserting that the Lender shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral; <u>provided</u>, <u>however</u>, that the foregoing shall have no effect on the Court's ability to consider a request for the equitable doctrine of marshaling or any similar doctrine from any party other than the Debtor.

30. <u>Section 552(b)</u>.  The Debtor expressly stipulates that (a) the Prepetition Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and (b) the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Lender with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral;  <u>provided</u>, <u>however</u>, that the foregoing shall have no effect on the Court's ability to consider a request for the application of the "equities of the case" exception or any similar doctrine from any party other than the Debtor.

31. <u>Discharge Waiver</u>.  The Debtor expressly stipulates that the DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of sections 524 and/or 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization.  The Debtor shall not propose or support any plan of reorganization or sale of all or substantially all of the Debtor's assets, or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of reorganization or such sale, of all DIP Obligations.

32. <u>Rights Preserved</u>.

(a)     Notwithstanding anything herein to the contrary, in the case of an Event of Default under the DIP Loan and Security Agreement, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, any of the Lender's rights under the Bankruptcy Code or under non-bankruptcy law, including, but not limited to, the right:  (i) to seek any other or supplemental relief in respect of the Debtor;  (ii) to request modification of the automatic stay under section 362 of the Bankruptcy Code;  (iii) to request dismissal of this Chapter 11 Case or any successor case, conversion of this Chapter 11 Case to a case under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers; or (iv) to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan.

(b)     Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the Lender are preserved.

33.     <u>No Waiver by Failure to Seek Relief</u>.  The failure of the Lender to seek relief or otherwise exercise their respective rights and remedies under this Interim Order, the DIP Loan Documents, the Prepetition Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder or otherwise of the Lender, as applicable.

34.     <u>Binding Effect of the Interim Order</u>.  Immediately upon entry by the Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding with respect to funds advanced pursuant to or incurred under or approved by this Interim Order, upon and inure to the benefit of the Debtor, the Lender, all other creditors of the Debtor, the Committee or any other committee appointed by the Court in this Chapter 11 Case, and all other parties in interest and their respective successors and

assigns, including any trustee or other fiduciary hereafter appointed in this Chapter 11 Case and any successor case, or upon dismissal of this Chapter 11 Case or any successor case.

35. <u>Interim Order Controls</u>. In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and this Interim Order, the provisions of this Interim Order shall govern and control.

36. <u>Survival</u>. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in this Chapter 11 Case; (b) converting this Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing this Chapter 11 Case or any successor case; (d) discharging the Debtor; or (e) pursuant to which this Court abstains from hearing this Chapter 11 Case or any successor case. The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the Lender pursuant to this Interim Order and/or the DIP Loan Documents, notwithstanding the entry of any such order, shall continue in this Chapter 11 Case and any successor case, or following the dismissal of this Chapter 11 Case or any successor case, and shall maintain their priority as provided by this Interim Order until all DIP Obligations have been indefeasibly paid in full in cash, and all commitments to extend credit under the DIP Facility are terminated. The terms and provisions of the DIP Loan and Security Agreement concerning the indemnification of the Lender shall continue in this Chapter 11 Case and any successor case or following dismissal of this Chapter 11 Case or any successor case, and following termination of the DIP Loan Documents and/or the repayment of the DIP Obligations.

37. <u>Final Hearing</u>. The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for **_____, 2025 at ____M (Eastern Time)** before

the Honorable Jill Mazer-Marino, United States Bankruptcy Judge, United States Bankruptcy Court for the Eastern District of New York. On or before **4:00 p.m. (Eastern Time) on _____, 2025**, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and notice of the Final Hearing (the "Final Hearing Notice"), together with a copy of this Interim Order and the DIP Motion, on: (a) the parties provided with notice of the Interim Hearing; (b) any party that, as of that date, filed a request for notices with this Court; (c) counsel for the Lender and any Committee; (d) the U.S. Trustee, (e) the United States Attorney for the Southern District of New York and (f) counsel for any party that holds trust rights under the Perishable Agricultural Commodities Act. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than _____**, 2025 at 4:00 PM (Eastern Time)**, which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtor, Attn. Kevin Nash, Goldberg Weprin Finkel Goldstein LLP, 125 Park Avenue, New York, New York 10017; (ii) counsel to the Statutory Committee, if any; (iii) counsel to the Lender, Attn.: Ian Winters, Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036; and (iv) the Office of the United States Trustee for the Eastern District of New York, Alexander Hamilton Custom House, One Bowling Green, Room 510, New York, New York 10004.

38. <u>Effect of this Interim Order</u>. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, only with respect to funds advanced or approved pursuant to this Interim Order, and notwithstanding Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule or Rule 62(a) of the Federal

Rules of Civil Procedure shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

39. <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Interim Order according to its terms and any dispute arising from or relating to this Order and the DIP Loan Documents or the Leewards Terms.