**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Surf 9 LLC, | Case No.:   25-40078-JMM |
| Debtor. | |

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (I) APPROVING AND AUTHORIZING SENIOR SECURED POSTPETITION FINANCING AND RELATED SUPPLY FINANCING; (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) AUTHORIZING USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY AND (VI) SCHEDULING A FINAL HEARING

Upon the motion [Dkt. No. 17] (the "DIP Motion")[1] of Surf 9 LLC (the "Debtor"), the above-captioned debtor and debtor-in-possession, pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking entry of an interim order (this "Interim Order"), pending a final hearing to be held on the DIP Motion (the "Final Hearing"), *inter alia*, authorizing the Debtor to enter into the DIP Loan and Security Agreement attached to the DIP Motion as Exhibit A and borrow up to $3,180,000 on an interim basis through February 22, 2025; and upon the Court's consideration of the DIP Motion, the DIP Loan Documents, the Rule 1007 Declaration [Dkt. No. 15] and the documents filed in response thereto, and upon the record of the interim hearing on the DIP Motion held on February 6, 2025 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with the Court's February 3, 2025 order; and it appearing that no further notice is required; and this Court having jurisdiction over the DIP Motion

---

[1] Terms capitalized but not defined herein shall have the meanings ascribed to them in the Motion.

and this being a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2) and 1334; and all objections

to the interim relief requested in the DIP Motion having been resolved as set forth herein; and it

appearing to the Court that granting the interim relief requested is necessary to avoid immediate

and irreparable harm to the Debtor and its estate pending the Final Hearing and otherwise is fair

and reasonable and in the best interests of the Debtor and its estate and creditors and essential for

the continued operation of the Debtor's business; and it appearing to the Court, solely based on

the Debtor's and Lender's representations at the Interim Hearing and in filings with the Court, that

the Lender is extending $3,180,000 to the Debtor in good faith and is entitled to the protections

provided by Section 364(e) of the Bankruptcy Code solely with respect to the $3,180,000 and

provided further that such finding may only be used in connection with the funding of $3,180,000

and any such good faith finding cannot be used for any other purpose; and after due deliberation

and consideration; and for good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, that:

1.     <u>Interim Approval</u>.  The DIP Motion is GRANTED, on an interim basis, as modified

to the extent provided herein.  The Debtor is authorized as of the date of the Interim Hearing to (a)

borrow up to the aggregate amount of $3,180,000 under the DIP Loan Documents (as modified

hereby and subject to the provisions hereof) and pursuant to the Budget; and (b) use Cash Collateral

in accordance with and for the purposes permitted under the DIP Loan Documents and pursuant

to the Budget.

2.     <u>Authorization of the DIP Financing and DIP Loan Documents</u>.  The DIP Loan

Documents, subject to the agreements stated on the record at the Interim Hearing and as modified

hereby, are approved on an interim basis.  The Debtor is expressly and immediately authorized

and empowered to execute and deliver the DIP Loan Documents, and to incur and perform the DIP

Obligations (excluding, until otherwise approved by an order of the Court, the Protective Advances) and to deliver all instruments and documents which may be required or necessary for the performance by the Debtor under the DIP Loan Documents and the creation and perfection of the DIP Liens (as defined herein). The Debtor is hereby authorized to pay the principal, interest, fees, expenses and other amounts described in the DIP Loan Documents and all other documents comprising the DIP Facility as such become due, without need to obtain further Court approval, including, without limitation, the fees and disbursements of the Lender in such capacity (including the reasonable fees and expenses of the Lender's attorneys and advisers). ***For the avoidance of doubt,*** no provision in the DIP Loan Documents or this Order shall confer any right on the Lender that may affect a transfer of any interest in the License Agreement (as defined in the DIP Motion), impair any interest of Body Glove IP Holdings, LP ("Body Glove") in its intellectual property and the License Agreement, or abrogate any provision of the License Agreement.

3.    <u>DIP Obligations</u>.  The DIP Loan Documents including this Interim Order, and as limited by this Interim Order, shall constitute and evidence the validity and binding effect of the Debtor's DIP Obligations, excluding the Protective Advances, which DIP Obligations shall be enforceable against the Debtor, its estate and any successors thereto, including, without limitation, any trustee or other estate representative appointed or elected in this Chapter 11 Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of this Chapter 11 Case.

4.    <u>DIP Liens and DIP Collateral</u>.  Effective immediately upon the entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2) and 364(c)(3) and 364(d) of the Bankruptcy Code: (a) the Lender is hereby granted continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected post-petition security interests in and liens in on (the "<u>DIP Liens</u>") all existing and after-acquired real and personal property, and all other assets of the Debtor,

except for all chapter 5 causes of action and the proceeds thereof, tangible and intangible, whether now owned by or owing to, or arising in favor of the Debtor, whether owned or consigned or licensed by or to, or leased from or to the Debtor (to the full extent of such Debtor's interests therein), and regardless of where located, including, without limitation, accounts, goods, inventory, receivables, and the following (collectively, the "DIP Collateral"):[2] (i) all Prepetition Collateral (defined below) and the proceeds thereof, (ii) all post-petition assets of the Debtor, and proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the foregoing, and any and all tangible or intangible property resulting from the sale, exchange, collection or other disposition of any of the foregoing, or any portion thereof or interest therein.

5.    Lender Lien Priority.    The DIP Liens securing the DIP Obligations shall be continuing, valid, binding, enforceable, non-avoidable and automatically perfected first priority security interests and liens junior only to the Carve Out and, solely with respect to the Leewards Collateral, the Leewards Liens.  The DIP Liens shall otherwise be senior to all other security interests, mortgages, collateral interests, liens or claims on or to any of the DIP Collateral.  Other than as specifically set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in this Chapter 11 Case.  The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in this Chapter 11 Case, upon the conversion of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, and/or upon the dismissal of this Chapter 11 Case or any successor case.  The DIP Liens shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code.

---

[2]    All defined terms used in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Loan Documents.  All terms not specifically defined in the DIP Loan Documents shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code, as applicable.

6.      <u>Lender Superpriority Claim</u>.  Upon entry of this Interim Order, the Lender is hereby granted, pursuant to section 364(c)(1) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in this Chapter 11 Case and any successor case (collectively, the "<u>DIP Superpriority Claim</u>") in the amount of the DIP Obligations.  The DIP Superpriority Claim shall be subordinate only to the Carve Out, and otherwise the DIP Superpriority Claim shall have priority over any and all administrative expenses and unsecured claims against the Debtor or its estate in this Chapter 11 Case and any successor case, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), and 1114, and any other provision of the Bankruptcy Code, and at all times be senior to the rights of the Debtor and its estate, and any successor trustee or other estate representative to the extent permitted by law.

7.      <u>No Obligation to Extend Credit</u>.  The Lender shall not have any obligation to make any loan under the DIP Loan Documents, unless all of the conditions precedent to the making of such loan under the terms of the applicable DIP Loan Documents and this Interim Order have been satisfied in full or waived in writing by the Lender.

8.      <u>Use of DIP Facility Proceeds</u>.  The Debtor shall use DIP Loans only for the purposes specifically set forth in the DIP Loan Documents and the Budget.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business unless otherwise approved by the Court.

9.      <u>Debtor's Stipulations</u>. The Debtor, without prejudice to the rights of any Committee and any other party in interest with requisite standing to challenge the same, admits, stipulates, acknowledges and agrees as follows (the "<u>Debtor's Stipulations</u>"): (i) as of the Petition Date, the

Debtor owed the Prepetition Lender under the Prepetition Financing Agreements not less than $30,442,398.47; (ii) pursuant to the Prepetition Financing Agreements, the Prepetition Indebtedness is secured by a blanket perfected first priority lien on all of the Debtor's assets, including but not limited to all of the Debtor's tangible and intangible property, equipment, inventory, accounts receivable, and all proceeds of the foregoing (the "<u>Prepetition Collateral</u>"); (iii) in the ordinary course of the Debtor's business prior to the Petition Date, the Debtor's receivables are collected by Express Trade and remitted to the Prepetition Lender to be applied to reduce the Prepetition Indebtedness; (iv) as of the date hereof, Prepetition Lender has not received any payments toward the Prepetition Indebtedness; (v) all advances made by the Lender, whether in its capacity as Lender or Prepetition Lender, have been to meet the Debtor's immediate cash needs and avoid irreparable harm, all of which advances remain outstanding, (vi) as of the Petition Date, the Debtor owes Body Glove the sum of at least the amount scheduled or allowed by the Bankruptcy Court, subject to true up in connection with an ongoing audit and Body Glove's rights pursuant to the License Agreement (the "<u>Body Glove Prepetition Indebtedness</u>"), (vii) pursuant to the License Agreement and the Licensor Intercreditor Agreement, dated as of November 30, 2023 (the "<u>Licensor Intercreditor Agreement</u>"), Body Glove has, as acknowledged in the Licensor Intercreditor Agreement, a claimed blanket perfected priority lien, junior only to the Prepetition Lender as of the Petition Date, on the Debtor's assets, including but not limited to all of the Debtor's tangible and intangible property, equipment, inventory, accounts receivable, and all proceeds of the foregoing. Each party reserves their respective rights with respect to the extent and priority of the Body Glove liens subject to the Licensor Intercreditor Agreement and in accordance with applicable law (the "<u>Reservations</u>"). Any rights that Leewards is getting under this Order and its agreement with Lender are subject to Lender's rights under the Licensor Intercreditor

Agreement. Nothing herein shall constitute a grant of a license or other right by Body Glove to Leewards of Body Glove's intellectual property.

10.  <u>Authorization to Use Cash Collateral and Granting Adequate Protection</u>:  Subject to the terms and conditions of this Interim Order and the DIP Loan and Security Agreement, the Debtor is authorized to use the Prepetition Lender's Cash Collateral, solely up to the amounts, at the times and in accordance with and for the purposes identified in the Budget, until the Termination Date (defined below), on the following terms and conditions:

(a)  The Debtor shall provide to the Prepetition Lender, counsel to any Committee, Counsel to Body Glove and the United States Trustee, so as to actually be received within three (3) business days following the end of every other week, bi-weekly line-by-line variance reports, for the preceding bi-weekly period and on a cumulative basis for the period from the Petition Date to the report date, comparing actual specified cash receipts and specified disbursements to lumped amounts projected in the Budget.  Absent the written consent of the Prepetition Lender, the Debtor cannot exceed the Permitted Weekly Variance.  Notwithstanding anything to the contrary, in no event shall any proceeds of the Prepetition Collateral be used for any investigation or analysis of any claim or cause of action against Prepetition Lender or any of its affiliates.

(b)  Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Lender in the Cash Collateral to the extent of any Diminution in Value, the Prepetition Lender is hereby granted continuing, valid, binding, enforceable and automatically perfected post-petition additional and replacement security interests and liens (collectively, the "<u>Adequate Protection Liens</u>") as follows: (a) a first priority perfected security interest in, and liens on, all DIP Collateral, whether arising prepetition or post-petition, that is not already subject to a valid, perfected, enforceable and unavoidable lien or security interest on the

Petition Date; and (b) a junior perfected security interest in and lien on all DIP Collateral, junior only to the DIP Liens and Carve Out and Leewards Liens, whether arising prepetition or post-petition, that is subject to (i) a valid, perfected, enforceable and unavoidable consensual lien or security interest in existence on the Petition Date or (ii) a valid and unavoidable consensual lien or security interest in existence on the Petition Date that is perfected subsequent thereto as permitted by section 546(b) of the Bankruptcy Code.

(c)     As additional adequate protection, the Prepetition Lender shall be granted an allowed superpriority administrative expense claim pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "<u>Adequate Protection Superpriority Claim</u>") to the extent of any Diminution in Value.  The Adequate Protection Superpriority Claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtor and proceeds thereof, but subject to the Carve Out and any superpriorty claims in favor of Leewards pursuant to the Leewards Terms. Subject only to the Carve Out and the DIP Obligations and any Leewards superpriority claim, the Adequate Protection Superpriority Claim granted to the Prepetition Lender hereunder shall not be junior to any administrative expense claims and shall have priority over all administrative expense claims against the Debtor now existing or hereafter arising, of any kind or nature whatsoever, including those of the kinds specified in or ordered pursuant to sections 105, 326, 327, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c) (subject to entry of the order granting the DIP Motion on a final basis (the "<u>Final Order</u>")), 507(a), 507(b), 546(c), 726, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment.

(d)     The Adequate Protection Liens shall not attach to chapter 5 causes of action or the proceeds thereof and shall be junior only to the Carve Out and the DIP Liens and, solely with

respect to the Leewards Collateral, the Leewards Liens.  Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in this Chapter 11 Case or any successor case, and shall be valid and enforceable against any trustee appointed in this Chapter 11 Case or any successor case, or upon the dismissal of this Chapter 11 Case or any successor case.  The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the Debtor's estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

(e)     Subject to the Reservations, pursuant to sections 361 and 363(e) of the Bankruptcy Code and as permitted under the Licensor Intercreditor Agreement, as adequate protection of the interests of Body Glove in the Cash Collateral to the extent of any Diminution in Value, Body Glove is hereby granted continuing, valid, binding, enforceable and automatically perfected post-petition additional and replacement security interests and liens (collectively, the "<u>Body Glove Adequate Protection Liens</u>"), subject to the priorities set forth in the Licensor Intercreditor Agreement, as follows: (a) a priority perfected security interest in and liens on all DIP Collateral, whether arising prepetition or post-petition, that is not already subject to a valid, perfected, enforceable and unavoidable lien or security interest on the Petition Date, junior to the Adequate Protection Liens, DIP Liens and Leewards Liens and subject to the Carve Out; and (b) a junior perfected security interest in and lien on all DIP Collateral, junior only to the DIP Liens, Adequate Protection Liens and Leewards Liens and subject to the Carve Out, whether arising prepetition or post-petition, that is subject to (i) a valid, perfected, enforceable and unavoidable consensual lien or security interest in existence on the Petition Date or (ii) a valid and unavoidable consensual lien

or security interest in existence on the Petition Date that is perfected subsequent thereto as permitted by section 546(b) of the Bankruptcy Code.

(f)    The Body Glove Adequate Protection Liens shall not attach to chapter 5 causes of action or the proceeds thereof and shall be junior only to the Carve Out, the DIP Liens, the Adequate Protection Liens and, solely with respect to the Leewards Collateral, the Leewards Liens. The adequate protection set forth herein is without prejudice to, and does not constitute a waiver of, the rights of the Prepetition Lender or Body Glove to request further or alternative forms of adequate protection at any time or the rights of the Debtor or any other party to contest such request.

11.    <u>Body Glove Royalty Payments</u>. The Guaranteed Minimum Royalty Payments for January through April of 2025, in the amount of $436,666.67 shall be paid in in three installments with the first payment of $145,555.56 due on or before February 21, 2025, the second installment of $145,555.56 due on or before March 21, 2025, and the third installment of $145,555.55 plus any additional true-ups (upwards or downwards) required under the License Agreement due on or before April 21, 2025.

12.    <u>Leewards Supply Finance Arrangements and Liens</u>. The Leewards Terms set forth in the Motion are approved as modified and set forth in the term sheet attached hereto as <u>Exhibit A</u>. Leewards shall have and is hereby granted automatically perfected liens and security interests on all goods supplied by Leewards to the Debtor from time to time during this Chapter 11 Case, as requested by the Debtor in accordance with the Budget, together with the proceeds thereof and all documentation in respect thereof (collectively, the "<u>Leewards Collateral</u>") in an amount up to the value of such Leewards Collateral (the "<u>Leewards Liens</u>"). Solely in respect of the Leewards Collateral and up to the value of the Leewards Liens, the Leewards Liens shall be senior to all liens

and security interests herein granted provided, however, to the extent Leewards Collateral includes goods with Body Glove's intellectual property, upon an event of default, Leewards rights and remedies shall be subject to, and in accordance with, the Licensor Intercreditor Agreement including, but not limited to, the rights and obligations for the Inventory Liquidation Period (as defined in the License Agreement). Leewards's ability to liquidate or sell the Leewards Collateral is as agent of the Debtor and subject to the Licensor Intercreditor Agreement Nothing herein shall constitute a grant of a license, sublicense, or right of use to Leewards of Body Glove's intellectual property.

13.    <u>Rights and Remedies of Lender Upon Event of Default.</u> Upon the occurrence and during the continuance of any event constituting an Event of Default under the DIP Loan and Security Agreement, the Prepetition Lender, on written notice to the Debtor and counsel to Body Glove ("<u>Notice of Termination</u>"), may declare (i) that the Debtor's right to use Cash Collateral is immediately terminated ten (10) days after delivery of the Notice of Termination.  During the ten (10) day period described in the preceding paragraph, the Debtor has the right to seek an order from the Court determining that the Event of Default has not occurred and the right to continue to use Cash Collateral.  If the Bankruptcy Court has not ruled that an Event of Default has not occurred or otherwise authorized the Debtor to continue to use Cash Collateral before the expiration of the ten (10) day notice period, then immediately upon expiration of such period (the "<u>Termination Date</u>"), the Debtor's remaining right to use Cash Collateral shall automatically cease, and the Debtor shall no longer have the right to use Cash Collateral without further Order of the Court. On the Termination Date, subject to the Reservations, the Prepetition Lender and the Licensor shall be entitled to take any action or exercise any right or remedy as provided in this Interim Order, the DIP Loan Documents, and the Licensor Intercreditor Agreement, as applicable,

with respect to the parties' respective collateral and enforcing any and all rights and remedies with respect to the collateral, in accordance with the terms of the Licensor Intercreditor Agreement.

14.    <u>Amendment of DIP Loan Documents</u>. The Debtor, with express written consent of the Lender, may enter into any non-material amendments, consents, waivers, or modifications to the DIP Loan Documents in accordance with the terms thereof without the need for further notice and hearing or any order of this Court. Any amendments, consents, waivers, or modifications to the DIP Loan Documents that purport to circumscribe or impair the rights of Boday Glove or impairs or affects the License Agreement shall be deemed to be material.

15.    <u>Section 507(b) Reservation</u>.   Nothing herein shall impair, limit or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Lender pursuant to this Interim Order is insufficient to compensate for any Diminution in Value of its interests in the Prepetition Collateral during the pendency of this Chapter 11 Case or any successor case.

16.    <u>Modification of the Automatic Stay</u>.   The automatic stay imposed under Bankruptcy Code section 362(a) hereby is modified as necessary to effectuate all of the terms and provisions of this Interim Order and the DIP Loan Documents and Leewards Terms approved hereby.

17.    <u>Automatic Perfection of Liens</u>.   This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens and the Adequate Protection Liens, Body Glove Adequate Protection Liens, and the Leewards Liens, without the necessity for filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account

control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens and the Leewards Liens, or to entitle the Lender and Prepetition Lender and Leewards to the priorities granted herein. Notwithstanding the foregoing, the Lender, Prepetition Lender and Leewards are authorized to file such financing statements and other instruments or documents to perfect or otherwise to evidence the applicable liens,  and all such financing statements and other documents shall be deemed to have been filed or recorded as of the Petition Date.  The Debtor is authorized to and shall execute and deliver promptly upon demand to the Lender all such financing statements and other documents as the Lender may reasonably request for purposes hereof.  A photocopy of this Interim Order may be filed as a financing statement or notice with any filing or recording office, or with any registry of deeds or similar office.

18.    <u>Maintenance of Cash Collateral, DIP Collateral, and Cash Management System</u>. Until the indefeasible payment in full in cash of all DIP Obligations, and the termination of the Lender's obligation to extend credit under the DIP Facility, the Debtor is authorized and directed to maintain the cash management system in effect as of the Petition Date, as modified by any order that may be entered by the Court, or as otherwise agreed to by the Lender, in its reasonable discretion, or as otherwise required by the DIP Loan Documents. Express Trade is authorized to remit receivables constituting DIP Collateral or Prepetition Collateral to the Lender to be applied in accordance with the Prepetition Financing Agreements, the DIP Loan Documents and the Budget.  The Prepetition Lender, Lender and Express Trade are authorized to collect, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into their possession or control that constitute Prepetition Collateral, DIP Collateral, or Leewards

Collateral, including Cash Collateral, and to apply such amounts in accordance with the terms of this Interim order and any Final Order.

19.     <u>Rights and Remedies Upon Event of Default</u>.  Immediately upon the occurrence and during the continuation of an Event of Default, the Lender, following any notice or cure period provided for under the DIP Loan and Security Agreement and herein, shall be entitled to declare (a) all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable, (b) the termination or restriction of any further commitment to extend credit to the Debtor to the extent any such commitment remains, and/or (c) the termination of the DIP Credit Agreement and any other DIP Loan Document as to any future liability or obligation of the Lender, but without affecting any of the DIP Liens or the DIP Obligations.

20.     <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order</u>.  Based solely on the Debtor's representations that the Lender has acted in good faith in connection with extending credit in the amount of up to $3,180,000, as authorized on an interim basis by this Interim Order, the Court finds that the Lender has acted in good faith with respect to the interim extension of credit of up to $3,180,000 and is entitled to the benefits of section 364(e) solely with respect to such interim extension of credit up to $3,180,000 in credit. In the event that any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code with respect to the extension of credit of up to $3,180,000 loaned pursuant to the DIP Loan Documents and approved pursuant to this Interim Order.  Any such modification, amendment or vacatur shall not affect the extent, validity, perfection, priority, allowability, enforceability or non-avoidability of any advances previously made or made, up to $3,180,000,, or lien, claim or priority granted, perfected,

authorized or created hereby. Any liens or claims granted to the Lender hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein. For the avoidance of doubt any findings made in connection with the interim extension of credit under this Interim Order may only be used for purposes of the extension of interim relief under section 364(e) and may not be raised or used for any other purpose including with respect to whether the Lender acted in good faith, including without limitation, in connection with its prepetition dealings with the Debtor and with respect to entry of a final order, and all parties rights to assert that the Lender did not act in good faith in extending credit or otherwise in connection with its dealings with the Debtor other than with respect to this Interim Order and the relief granted hereunder, are reserved and preserved.

21.    <u>Proofs of Claim</u>. The Lender will not be required to file proofs of claim or requests for administrative expenses in this Chapter 11 Case and entry of this Interim Order shall be deemed to constitute a timely filed proof of claim or request for administrative expense, as applicable.

22.    <u>Rights of Access and Information</u>.  Without limiting the rights of access and information afforded the Lender under the DIP Loan Documents and without limiting the rights of access and information afforded to Body Glove under the License Agreement, the Debtor is authorized to afford representatives, agents and/or employees of (a) the Lender and (b) Body Glove, as appropriate, reasonable access to the Debtor's premises, books and records in accordance with the DIP Loan Documents and the License Agreement, and is authorized to reasonably cooperate, consult with and provide to such persons all such information as may reasonably be requested.

23.     <u>Carve Out</u>.  As used in this Interim Order, the "Carve Out" means the following expenses:  (i) all statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. Section 1930(a)(6) and applicable interest thereon; (ii) allowed and unpaid professional fees and disbursements incurred by counsel to the Debtor, subject to the Budget, to the extent allowed or later allowed by order of the Court under sections 330 and 331 of the Bankruptcy Code; and (iii) in the event of conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, $20,000 for the Chapter 7 trustee's fees and expenses (collectively, the "<u>Carve Out</u>"). During the continuance of an Event of Default under the DIP Facility or the Financing Orders, as the case may, the Carve Out set forth under subsection (ii) above shall be limited to $75,000, and any payments made pursuant thereto shall reduce the Carve Out on a dollar-for-dollar basis.  For the avoidance of doubt, the Lender shall have no obligation to advance monies in excess of the Maximum Amount.

24.     <u>No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees</u>.  The Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any professionals incurred in connection with this Chapter 11 Case or any successor case.  Nothing in this Interim Order or otherwise shall be construed (i) to obligate the Lender in any way to pay compensation to or to reimburse expenses of any professional, or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement;  (ii) to increase the Carve Out if actual allowed professional fees are greater than amounts reflected in the Budget or estimated fees and disbursements of a professional are greater than amounts reflected in the Budget;  or (iii) as consent to the allowance of any professional fees or expenses of any professional.  Any funding of the Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral.

25. <u>Limitations on the DIP Facility, the DIP Collateral and the Carve Out</u>. The DIP Facility, the DIP Collateral and the Carve Out may not be used by the Debtor in connection with: (a) preventing, hindering or delaying any of the Lender's enforcement against or realization upon any of the DIP Collateral or Prepetition Collateral once an Event of Default has occurred, except to contest that an Event of Default has occurred;  (b) selling or otherwise disposing of DIP Collateral without the consent of the Lender;  (c) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the Lender;  (d) investigating, litigating, objecting to, contesting or challenging in any way, or raising any defenses to the claims, liens, interests (including interests in the Prepetition Collateral or DIP Collateral), mortgages or security interests held by or on behalf of the Lender;  (e) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Prepetition Lender, Lender, or any of its officers, directors, agents or employees;  (f) investigating, litigating, objecting to, contesting or challenging in any way, or raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of any of the Prepetition Indebtedness or DIP Obligations, or the validity, extent, amount, perfection, priority or enforceability of the Prepetition Liens or DIP Liens, or any other rights or interests of the Lender or Prepetition Lender under the DIP Loan Documents or Prepetition Financing Agreements; or (g) seeking to subordinate or re-characterize the Petition Indebtedness or the DIP Obligations.

26. <u>Reservation of Certain Third-Party Rights and Bar of Challenges and Claims</u>. The Committee, and any other party in interest (other than the Debtor and their successors, with the exception of a Chapter 7 or Chapter 11 trustee appointed during the Challenge Period (as defined herein)) approved by the Court, may seek to avoid, object to or otherwise challenge the findings

Case 1-25-40078-jmm    Doc 42    Filed 02/12/25    Entered 02/12/25 16:03:47


or Debtor's Stipulations herein regarding (a) the validity, extent, priority or perfection of the mortgages, security interests and liens of the Prepetition Lender, or (b) the validity, allowability, priority, fully secured status or amount of the Prepetition Indebtedness.  A party in interest, including the Committee, must commence, as appropriate, a contested matter or adversary proceeding raising such claim, objection, defense or other challenge, including, without limitation, any claim against the Lender in the nature of a setoff, counterclaim or defense to the applicable Prepetition Indebtedness or the Prepetition Liens (each, a "<u>Challenge</u>") within sixty (60) calendar days from the date of appointment of the Committee or, if no Committee is appointed, from entry of the Final Order (the "<u>Challenge Period</u>").  The applicable Challenge Period may only be extended with the written consent of the Lender or by order of the Court for good cause shown. Upon conversion of the case to chapter 7 or the appointment of chapter 11 trustee, to the extent that the applicable Challenge Period has not expired, such period shall automatically be extended for sixty (60) days from the date a chapter 7 or 11 trustee is appointed.  Upon the expiration of the Challenge Period (the "<u>Challenge Period Termination Date</u>"), without the filing of a Challenge (or if any such Challenge is filed and overruled):  (i) any and all such Challenges by any party (including, without limitation, the Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in this Chapter 11 Case, and any Chapter 7 trustee and/or examiner or other estate representative appointed or elected in any successor case), shall be deemed to be forever waived and barred;  and (ii) all of the Debtor's Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent and validity as to the Prepetition Lender's claims, liens and interests as set forth herein shall be of full force and effect and forever binding upon the Debtor's estate and all creditors, interest holders and other parties in interest in this Chapter 11 Case and any successor case.

27. <u>Reservation of Rights with Respect to the License Agreement</u>. The rights of all parties with respect to pursuing assumption or rejection of the License Agreement, including, without limitation,  whether the License Agreement (a) was terminated prior to the Petition Date, and (b) can be assumed and/or assumed and assigned pursuant to section 365 of the Bankruptcy Code are reserved, and nothing in this Order shall affect such rights, claims, and defenses. On or before July 1, 2025, the Debtor shall file any motion seeking to assume or reject the License Agreement, without prejudice to all of Body Glove's rights, claims, and defenses with respect to such motion, all of which rights, claims and defenses are expressly preserved. Notwithstanding anything else set forth herein, Body Glove may move to compel assumption or rejection of the License Agreement at anytime on such notice as may be appropriate under the circumstances.

28. <u>No Third-Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third-party, creditor, equity holder or any direct, indirect or incidental beneficiary.

29. <u>Interim Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and this Interim Order, the provisions of this Interim Order shall govern and control.

30. <u>Survival</u>.  Until all DIP Obligations have been indefeasibly paid in full in cash, and all commitments to extend credit under the DIP Facility are terminated, the provisions of this Interim Order and any actions taken pursuant hereto and the claims, liens, security interests and other protections granted hereunder or under the DIP Loan Documents shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in this Chapter 11 Case; (b) converting this Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code; (c)

dismissing this Chapter 11 Case or any successor case; (d) discharging the Debtor; or (e) pursuant to which this Court abstains from hearing this Chapter 11 Case or any successor case.

31.    <u>Final Hearing</u>.  The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for **February 19, 2025 at 10:00 a.m. (Eastern Time)** before the Honorable Jill Mazer-Marino, United States Bankruptcy Judge, United States Bankruptcy Court for the Eastern District of New York.  Upon entry of this Interim Order, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and notice of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with a copy of this Interim Order and the DIP Motion, on (a) the parties provided with notice of the Interim Hearing; and any other party that, as of that date, filed a request for notices with this Court. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than **February 14, 2025 at 4:00 PM (Eastern Time)**, which objections shall be served so as to be received on or before such date by:  (i) counsel to the Debtor, Attn. Kevin Nash, Goldberg Weprin Finkel Goldstein LLP, 125 Park Avenue, New York, New York 10017; (ii) counsel to the Committee, if any;  (iii) counsel to the Lender, Attn.: Ian Winters and Stephanie Sweeney, Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036; (iv) counsel to Leewards, Attn: Jeffrey Golden, Golden Goodrich, 3070 Bristol St., Ste 640, Costa Mesa, CA 92626, (iv) counsel to Body Glove, Attn: Ira Herman and Evan Zucker, 1271 Avenue of the Americas, New York, New York 10020, and (v) the Office of the United States Trustee, Region 2, Alexander Hamilton Custom House, One Bowling Green, Room 510, New York, New York 10004, Attn: Jeremy Sussman.

32.    <u>Binding Effect of this Interim Order</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, only with respect to funds advanced or approved pursuant to this Interim Order, and notwithstanding Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof and inure to the benefit of all parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in this Chapter 11 Case and any successor case, or upon dismissal of this Chapter 11 Case or any successor case.

33.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms and any dispute arising from or relating to this Order and the DIP Loan Documents or the Leewards Terms.



Dated: February 12, 2025
         Brooklyn, New York

_____
Jil Mazer-Marino
**United States Bankruptcy Judge**

## Exhibit A

### Leewards Terms

| Payment Terms | Leewards shall continue to supply product to Debtor upon Debtor's request consistent with past practice, with payment therefor due within one (1) week after payment by Costco for its purchase of such goods – such open terms shall continue to be provided to the Debtor through 2027 provided no event of default |
|---|---|
| Deposit | $900,000 released to Debtor for payment to Leewards' supplier to be used only for pumps and paddles required for Leedwards goods<br><br>Remainder of Deposit retained by Leeward as security |
| Interest | 5% per annum on the purchase price of goods supplied commencing on the date such purchase price is due and remains unpaid |
| Liens and Superpriority Claim | Leewards shall have an automatically perfected senior priority lien and security interest, senior to all liens including that of the Lender, solely on all goods delivered upon request of the Debtor, together with all proceeds and documentation thereof (the "Leewards Collateral") up to the invoice value of such goods (the "Leewards Liens").  The lien remains on proceeds until Leewards is paid and such proceeds cannot be used for any other purpose absent Leewards consent.<br><br> Leewards shall have a superpriority claim against the Debtor, senior to the Superpriority Claim of the Lender (subject to the Carve Out), up to the value of the Leewards Collateral, for any amounts due and payable that remain unpaid. |
| Reporting | Debtor shall provide Leewards with periodic weekly reporting of shipments and receipt of payment for the sale of Leewards collateral.  Leewards shall have log in access for real time information regarding payments by Costco. |
| Default and Remedies | Upon Debtor's failure to cause any amounts to be paid to Leewards as and when required, Leewards may immediately draw down upon the Deposit retained by Leewards in such amount, |

| | |
|---|---|
| | without further order of the Court.  Leewards will provide notice of any draw down to Debtor and Lender immediately after the fact.<br><br>In the event the Deposit is insufficient to satisfy the amount due, Leewards may: (1) without further order of the Court, immediately stop shipments (except of any products for which Leewards has already received payment); and/or (2) after notice to Debtor and Lender, seek relief from the Court to take all actions to enforce its rights, including to foreclose upon the Leewards Liens |
| Plan of Reorganization | Any plan of reorganization filed by Debtor shall propose that at least 65% of pre-petition amounts due Leewards shall be paid on or before December 31, 2025 and that the remaining 35% of the pre-petition amounts due Leewards shall be paid on or before June 30, 2026 – the Debtor agrees that the prepetition claim shall include the reasonable and documented attorneys' fees incurred by Leewards and shall be proposed in the plan to be paid on the timetable above.  Leewards treatment under a plan will not be worse than other general unsecuredcreditors. |
| Right of First Refusal | Leewards shall have the right of first refusal to produce or accept purchase orders from the Debtor offered to similarly situated suppliers for the 2026 season |
| Successor Case | The Court's order approving these Leewards Terms shall direct that these terms shall be binding upon any subsequently appointed bankruptcy trustee in the Chapter 11 Case or any successor case. |