# GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP

ATTORNEYS AT LAW

ANDREW W. ALBSTEIN*
STEVEN R. UFFNER
KEVIN J. NASH
IRIS A. ALBSTEIN
DOUGLAS TAUS
ROBERT W. LO SCHIAVO*
ELIZABETH SMITH* †
KATHARINE M. FINCH◊
MATTHEW E. HEARLE
AUBREY E. RICCARDI
ANTHONY J. SCHLUR
DANIEL J. SLATZ
STEWART A. WOLF*
YAN LAURENCY
ERIK ZARATIN◊
NEIL I. ALBSTEIN*
ELLIOT FINK
ERICA D. VITANZA*

J. TED DONOVAN
SERGIO J. TUERO*
JAY E. SIMENS
BRIAN W. KEMPER
M. BRIAN CRONK
JARED STEINBERG♦
AMANDA ZIFCHAK
AARON GOLDBLUM*
ANDREW C. ST. CYR
JACOB E. WOLLACH
SAMUEL KATZ
KELLY A. MOLLOY
RAVI VOHRA*
ASHLEY M. KOENEN

125 PARK AVENUE
12TH FLOOR
NEW YORK, NY 10017
(212) 221-5700
TELECOPIER (212) 730-4518

BARRY E. ZWEIGBAUM
ARNOLD I. MAZEL
BENJAMIN C. KIRSCHENBAUM
ROBERT KANDEL
ROBERT F. LINER
(OF COUNSEL)

EMANUEL GOLDBERG (1904 - 1988)
JACK WEPRIN (1930 - 1996)
BENJAMIN FINKEL (1905 - 1986)
HARVEY GOLDSTEIN (1930-2025)

\* ALSO MEMBER OF NEW JERSEY BAR
† ALSO MEMBER OF MASSACHUSETTS BAR
◊ ALSO MEMBER OF CONNECTICUT BAR
° ALSO MEMBER OF CALIFORNIA BAR
♦ ALSO MEMBER OF OHIO AND PENNSYLVANIA BARS

December 30, 2025

*Via ECF*
Hon. Jil Mazer-Marino
U.S. Bankruptcy Court
271-C Cadman Plaza East
Brooklyn, NY 11201

   Re: <u>Surf 9 LLC – Case No. 25-40078 (JMM)</u>
     Discovery Dispute and Conference

Dear Judge Mazer-Marino:

  Please accept this letter on behalf of the Debtor with respect to today's discovery conference. I am also writing in response to Samuel D Levy, Esq.'s letter from yesterday regarding alleged discovery deficiencies, which are mischaracterized. Indeed, the adage that those who live in glass houses should not throw stones is a fitting backdrop to the Debtor's response. On balance, the Debtor has made voluminous documentary production consisting of thousands, if not tens of thousands of pages, plus produced Marshall Crosby, the Debtor's COO and the person responsible for financing reporting, budgets and projections for a 30(b)(6) deposition. This deposition was conducted on Christmas Eve for many hours.

  The continued involvement of the Debtor's CEO, John Chenciner, if any, is unsettled at this point as there is an internal divergence of opinions as to the future of the Company. Mr. Chenciner is separately represented by counsel and Body Glove's subpoena for Mr. Chenciner has been forwarded to his personal counsel.

  It is also noteworthy that to facilitate production of emails, the Debtor engaged a third party e-discovery vendor and has proceeded in good faith to produce a comprehensive set of emails. Indeed, that 20,000 emails were produced is a function of the wide ranging search terms employed by the parties, which are also in dispute, but certainly the Debtor has proceeded in good faith.

In contrast to the Debtor's efforts, Body Glove is playing fast and loose with discovery obligations. More particularly, Body Glove has utilized the "cover" of the confidentiality stipulation to withhold meaningful discovery from the Debtor through widespread redactions to emails already marked confidential or highly confidential. This practice cannot be justified since the entire purpose of a confidential designation is to preserve the information from widespread circulation while making production to the parties. Once deemed confidential or highly confidential, there is no valid basis for Body Glove to then redact the documents, which plainly undermines their utility. An example of this type of redaction is attached as Exhibit "A", consisting of a sample set of six documents. To preserve confidentiality, Exhibit "A" will not be filed on the ECF docket, but will be separately forward to Chambers by email.

Further, it appears that Body Glove is refusing to provide direct access to the Debtor's discovery consultant so a full review of the emails can be made. As a result, the Debtor has been delayed as well, which caused me to cancel a deposition of Body Glove before the holidays, although Body Glove took the depositions of Mr. Sprei and Mr. Crosby.

Additionally, it appears that Body Glove has refused to turn over important emails and documents altogether regarding Body Glove's decision to utilize a Canadian company known as Jovi to sell Body Glove branded flip-flops to Costco, allegedly in violation of the license. This was a permitted practice for 2025 pursuant to a pre-petition amendment, but no amendment was ever signed for 2026, which would require Bankruptcy Court approval in any event. Nevertheless, the practice continues. While Body Glove relies on certain conflicting emails to justify its actions, it has not provided any documents from its own files relating to the basis or scope of the Jovi flip-flop sales to Costco despite multiple requests and a meet and confer on Sunday night, December 28, 2025.

Anticipating that a discovery dispute was brewing, I again forwarded the email exchange to Body Glove's counsel yesterday reflecting the prior production that was made by the Debtor. A copy of this email chain is attached hereto as Exhibit "B". This production was made despite the press of ongoing business efforts, short staffing (particularly around the holidays) and the very tight timeframe for production and depositions, which in retrospect was too short.

I will address the balance of issues at the conference, and note that the Debtor is looking towards the DIP Lender to finance the cure and provide a letter of credit for adequate assurance of future performance. Stephanie Sweeney produced the application filed with Express Trade and ultimately IDB, and we recognize that issuance of letters of credit are important and must be produced in advance of January 7, 2026.

                Respectfully yours,

                /s/ Kevin J. Nash, Esq.

Enclosures
cc: All counsel via ECF filing